T.C. Memo. 1997-188


UNITED STATES TAX COURT


ESTATE OF BONNIE I. BARGE, DECEASED,
C. RICHARD BARGE, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 230-92.                    Filed April 23, 1997.


     At issue is the valuation of a 25-percent
undivided interest in timberland that was the subject
of gifts made by donor.  R determined a deficiency in
Federal gift tax based on her valuation of the
interest.  <u>Held</u>:  Value of interest determined by
discounting partition award to present value.


<u>Harris H. Barnes III</u> and <u>John V. Eskrigge</u>, for petitioner.

<u>Robert W. West</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  Respondent determined deficiencies in Bonnie I. Barge's Federal gift tax for 1987 and 1988 in the amounts of $5,547,988 and $4,000, respectively.  Respondent also determined an addition to tax under section 6660 in the amount of $1,664,396 for 1987.  Respondent has since conceded that no addition to tax under section 6660 is due.  We accept that concession.  The only issue remaining for decision is the value of a 25-percent interest in certain timberland that was the subject of gifts made by Bonnie I. Barge in 1987.  Respondent's determination of a deficiency in gift tax liability for 1988 is a consequence of her determination with respect to 1987, and it requires no separate analysis from us.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable periods in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulation of facts filed by the parties with accompanying exhibits is incorporated herein by this reference.  Bonnie I. Barge filed the petition in this case on January 3, 1992.  At that time, she resided in Macon, Mississippi.  Subsequently, she died, and we ordered that Estate of Bonnie I. Barge, C. Richard Barge, Executor, be substituted as petitioner.

The Partnership

In 1941, Bonnie I. Barge (decedent) and her husband, C.A. Barge, formed a general partnership, eventually known as the C.A. Barge Lumber Co. (the partnership), for the purpose of carrying on a lumber business. In that same year, decedent and C.A. Barge purchased approximately 60,000 acres of timberland in Winston and Noxubee Counties, Mississippi (the timberland). They acquired the timberland as tenants in common, and each owned an undivided one-half interest. The partnership operated the timberland as a business for timber growth, harvesting, and sale on behalf of decedent and C.A. Barge.

Decedent and C.A. Barge had three children (the children): Richard, Betty, and Charlene. In 1959, C.A. Barge died. He devised his one-half interest in the timberland one-half to decedent and one-half to the children, in equal shares (so that each child received an 8.33-percent undivided interest in the timberland). After the death of C.A. Barge, decedent owned a 75-percent undivided interest in the timberland.

Decedent's Gifts

In 1976, decedent gave a 25-percent undivided interest in the timberland to the children in equal shares. After the 1976 gift, decedent owned an undivided 50-percent interest in the timberland, and each of the children owned an undivided interest of 16.67 percent.

Because of purchases and sales, in 1987, the timberland totaled approximately 44,972 acres. On or about February 6, 1987, decedent gave an undivided 25-percent interest (the undivided interest) in the timberland to separate trusts established for the benefit of her 10 grandchildren (the 1987 gifts).

Partnership's Management Philosophy

Two management philosophies exist in the timber industry: That which produces a majority of pulpwood, known as plantation stand or even age management (pulpwood management), and that which produces a majority of saw timber, known as natural stand or uneven age management (saw timber management). The objective of saw timber management is to allow trees to grow to maturity, which can take as long as 50 years, for use as lumber and poles. Each tree to be harvested is specially selected and marked. Pulpwood management, used by those who grow pulpwood for use by paper companies, involves clear-cutting a certain number of acres on a shorter rotation, before the trees reach their maturity. Consequently, pulpwood management, which harvests younger trees, accelerates the cash-flow from a given stand of timber. Saw timber management, on the other hand, reduces current cash-flow by postponing the harvests and sales until later years, when the trees reach maturity. The risk of loss to trees on account of pests, disease, and other factors increases, however, as they age.

The partnership's management objective was the production of large, mature trees for use as saw timber and poles, in line with the saw timber management philosophy. The management philosophy adopted by the partnership did not maximize the current income and profit from the timberland. Operating the timberland under the pulpwood management philosophy would have greatly increased the cash-flow available from the timberland.

Decedent's 1987 Gift Tax Return and Respondent's Notice of Deficiency

Decedent reported the 1987 gifts on a U.S. Gift (and Generation Skipping Transfer) Tax Return, Form 709, for 1987. She reported the value of the 1987 gifts to be $2,450,002. In her notice of deficiency for 1987, respondent explained that she had determined the value of the undivided interest to be $12,847,252.

Fair Market Value of the 44,972 Acres

As of the date of the 1987 gifts, the fair market value of the fee simple ownership of the timberland, including land and timber, was $40 million.

Fair Market Value of the Undivided Interest

The fair market value of the undivided interest was $7,404,649 on February 6, 1987.

OPINION

I. Introduction

This case involves the value of certain gifts made in 1987 (the 1987 gifts) by Bonnie I. Barge (decedent) in trust for the benefit of her 10 grandchildren. The 1987 gifts were of portions of a 25-percent undivided interest in certain timberland (the timberland). The parties agree that the question for decision by the Court is the fair market value of the 25-percent undivided interest in the timberland (the undivided interest) as of February 6, 1987. Petitioner argues that the fair market value of the undivided interest in February 1987 was between $4,200,000 and $4,888,600 and on February 6, 1987, it was $4,750,000. Respondent argues that the fair market value of the undivided interest on February 6, 1987, was at least $8,413,050. The parties have stipulated that, as of the date of the 1987 gifts, the fair market value of the timberland was $40 million.

The standard for determining fair market value for purposes of the gift tax is the price at which the property would change hands between a willing buyer and seller, neither being under any compulsion to buy or sell, and both having knowledge of relevant facts. Sec. 25.2512-1, Gift Tax Regs. Valuation is an issue of fact, and petitioner bears the burden of proof. Rule 142(a). We have found that the fair market value of the undivided interest was $7,404,649 on February 6, 1987. We will explain our reasons for making that finding.

II.  Valuation of the Gift

In part, to support their respective valuations, the parties have relied on the testimony of experts.  We have considered that testimony and, in part, have relied on it in reaching our own conclusion.

A.  Method of Valuation

Based on expert testimony, petitioner requests that we value the undivided interest in one of two ways:  (1) apply a discount (50 percent) to 25 percent of the value of the timberland ($40 million) to take into account various problems relating to the ownership of an undivided fractional interest, or (2) use an income capitalization approach.  Because of the possibility that, by way of an action for partition, the undivided interest could, in a reasonable amount of time, be liquidated or turned into a fee interest in some portion of the timberland, we believe that a capitalization approach is a reasonable way to arrive at a value for the undivided interest.  At the end of the partition period, a hypothetical owner of the undivided interest would receive either cash payment or a fee interest in certain acreage (a payment in kind).  During the pendency of the action, she would (as will be shown) receive certain cash payments.  We believe that we can value all of those payments and determine an appropriate discount rate.  With such data, we can determine a present value for the undivided interest.  But cf. Harwood v. Commissioner, 82 T.C. 239, 265 (1984) (declining to accept an

income capitalization approach to value limited partnership interests in a family partnership engaged in the forest products business), affd. without published opinion 786 F.2d 1174 (9th Cir. 1986).

Petitioner's expert, Thomas J. Ebner (Ebner), a forest consultant, relied heavily on an income capitalization approach. Petitioner's expert, Richard H. Pinkowski, Jr. (Pinkowski), a registered forester, considered an income capitalization approach, among other approaches. Respondent's expert, Earl Flowers (Flowers), a registered forester, did not rely on an income capitalization approach and relied exclusively on a market comparison approach. Nevertheless, on brief, respondent argues that the value of the undivided interest is to be determined by considering the present value of the benefit to be received on partition.

We do not find Pinkowski's income capitalization analysis persuasive. He had little experience with that type of analysis, and he merely applied an income capitalization methodology that he obtained from a journal article. Moreover, he projected future income based only on past income from one year, 1987, a year which produced abnormally high income due to the Barges' excessive harvesting, which was done in order to raise cash to pay gift taxes.

Ebner's report and testimony, on the other hand, did influence our analysis. He determined a future income stream

based upon the cash-flow of the years 1983 through 1986. Using the partnership's tax returns and income and expense statements, he first calculated that an average cash-flow applicable to a 25-percent interest was $341,000 a year. He then concluded that, because the partners received distributions of only 86 percent of that cash-flow, a purchaser of a 25-percent interest would receive $293,000 a year. He thought that a private investor (as opposed to a forest products company or an institutional investor) would be the most likely purchaser of the undivided interest. He concluded that a private investor would capitalize the estimated $293,000 annual cash-flow at 10 percent and add the unrealized gain on the buildup of inventory resulting from the Barges' saw timber management policies to make a maximum offer of $3,340,000.

Ebner did not consider that a potential purchaser unsatisfied with the Barges' saw timber management philosophy could force a partition of the property and, thus, escape the Barge management philosophy. Petitioner agrees that Mississippi law provides for partition of real property. See Miss. Code Ann. sec. 11-21-3 (Supp. 1996). If the timberland were partitioned, a purchaser would pay an amount equal to the present value of (1) the cash-flow expected under Barge management for the period until partition (minus the costs of partition, which would be divided equally over the partition period), and (2) the value of

the interest on partition (which, if she received a payment in kind, would not be subject to the Barge management philosophy). Accordingly, in order to determine the price that the purchaser would pay, we must figure (1) the length of the partition process and its costs, (2) the proper interest rate a buyer would demand, and (3) the value of a 25-percent fee simple after partition.

### B. What a Purchaser Would Pay

#### 1. Partition

In partition suits, Mississippi courts tend to favor equitable partition-in-kind over an outright sale of the entire property. Shaw v. Shaw, 603 So.2d 287, 290 (Miss. 1992). Petitioner's expert, William C. Smith, Jr. (Smith), was of the opinion that a contested partition would take from 2 to 5 years to resolve at a total cost of about $1,150,000 to $1,500,000, which would be borne equally by the parties. Members of the Barge family testified that they would resist any attempt to partition the timberland. We are not convinced that such resistance would be undertaken just for the sake of delay, since it would not be cost free. Resistance might be mounted to obtain an advantageous partition, however. We judge that a partition action would take 4 years, and that the party initiating such action would bear one-half of total partition costs of $1,325,000.

### 2. Discount Rate

Respondent argues that a capitalization rate of 9 to 10 percent is applicable in this case.  In support of that argument, she points to Ebner's testimony and to the testimony of her own expert, Flowers.  Petitioner argues for a discount rate of 14 percent:

> the rate of return which a potential investor would require from the type of investment involved herein is considered a minimum of 10% exclusive of investment risks.  The evidence in this case clearly indicates that there are many risks inherent with the ownership of this type property.  Therefore, it is reasonable for the court to accept 14% as a required rate of return on this type of investment.  * * *

Petitioner points only to the expert testimony of Pinkowski to support a rate of return of 14 percent.  We do not find Pinkowski particularly helpful with respect to the capitalization approach.  Petitioner has failed to prove that a discount rate of greater than 10 percent is appropriate.  We shall use 10 percent.

### 3. Value of Interest After Partition

The parties have stipulated that the timberland had a fair market value of $40 million as of the date of the 1987 gifts.  Respondent argues, however, that because of the Barges' saw timber management philosophy, the value of the timberland would increase during the period of any action to partition.  We think

that that is correct. Petitioner's expert, Ebner, was of the opinion that the increase would be $363,000 a year. We reach a figure close to that and conclude that the timberland would be worth $41 million at the end of a 4-year partition period. Accordingly, we believe that the partition award to a 25-percent owner of the timberland at the end of a 4-year partition action would be worth $10,250,000

III. Fair Market Value

Accordingly, using a 10-percent rate of return, a partition period of 4 years, future income of $293,000 per year during the partition period, partition costs of $662,500 (the purchaser's 50-percent share of $1,325,000) allocated equally over the partition period, and a value of $10,250,000 after partition, we find that the fair market value of the 1987 gift to be $7,404,649 under the following calculation:

| Year | Income | | Partition Costs | | Partition Payment | Total | Present Value |
|---|---|---|---|---|---|---|---|
| 1 | $293,000 | – | $165,625 | + | $0 | $127,375 | $115,795 |
| 2 | 293,000 | – | 165,625 | + | 0 | 127,375 | 105,268 |
| 3 | 293,000 | – | 165,625 | + | 0 | 127,375 | 95,699 |
| 4 | 293,000 | – | 165,625 | + | 10,250,000 | 10,377,375 | 7,087,887 |
| Total | | | | | | | $7,404,649 |

Decision will be entered

under Rule 155.